HECHT PARTNERS LLP
REBECCA A. PETERSON (#241858)
1650 W. 82nd Street, Suite 880
Bloomington, Minnesota 55431
Telephone: (612) 778-9595
E-mail: rpeterson@hechtpartners.com

Counsel for Plaintiff and the Class
(Additional Counsel listed on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YOLANDA PITRE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLÉ HEALTH SCIENCE U.S., INC.,<br><br>Defendant. | CASE NO. ________<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)<br>2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)<br>3. Fraud by Misrepresentation<br>4. Negligent Misrepresentation<br>5. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

1. Plaintiff Yolanda Pitre ("Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned attorneys, brings this Class Action Complaint against Defendant Nestlé Health Science U.S., Inc. ("Defendant" or "Nestlé"), for its knowing, reckless, negligent, and/or intentional practice of misrepresenting and partially misrepresenting that Nestlé's biotin supplements were beneficial and of high quality when, in fact, the overwhelming amount of the biotin in its Biotin Supplements is nutritionally valueless. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of the nutritional benefits and biotin absorption on the Products' labels and relevant packaging, and restoring monies to the members of the proposed Class. Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel as to herself, and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2. Biotin supplements are among the most widely sold dietary supplements in the United States.

3. Biotin supplements' popularity has soared among the general public because manufacturers, distributors, and sellers of biotin supplements actively and continually promote biotin supplements as enhancing their users' beauty routine and supporting their hair, skin, and nail health.

4. Nestlé , a Delaware corporation with its principal place of business in New Jersey, is one of the largest marketers, distributors, and sellers of biotin supplements in the United States.

5. Nestlé distributes, markets, and sells biotin supplements in doses of 1000 mcg, 5000 mcg, 7500 mcg, 8mg, and 10,000 mcg, under various brand names that it owns, including, without

limitation, Nature's Bounty, Pure Encapsulations, Solgar, Puritan's Pride, and Sundown ("Products" or "Biotin Supplements").[1]

6. The Biotin Supplements are sold throughout the United States, including in California, and are widely available for sale to consumers at many brick-and-mortar stores and on the Internet.

7. Nestlé promotes the sale of its Biotin Supplements by making various health claims about them on the Products' labels and relevant packaging, and also in Nestlé's advertising.

8. Yet despite making these health claims in an effort to entice consumers to buy its Biotin Supplements, Nestlé deliberately conceals from consumers a fact about those supplements that would be vitally important to reasonable consumers when deciding whether or not to buy them.

9. Specifically, Nestlé fails to disclose to consumers that the overwhelming amount of biotin in the Biotin Supplements that it is selling to consumers is valueless, both as a matter of law and of nutritional science.

10. In fact, as will be shown below, Nestlé knows, and has publicly acknowledged, that humans of all ages need vastly *less* biotin each day to provide them with optimal health and well-being than the amounts contained in its Biotin Supplements.

[1] Biotin Supplements include: Nature's Bounty Biotin Gummies, 1000 mcg; Nature's Bounty Biotin coated Tablets, 1000 mcg; Nature's Bounty Biotin Quick Dissolve Tablets, 5000 mcg; Nature's Bounty Biotin Rapid Release Softgels, 5000 mcg; Nature's Bounty Biotin Rapid Release Softgels, 10,000 mcg; Solgar Biotin 1000 mcg Vegetable Capsules; Solgar Biotin 5000 mcg Vegetable Capsules; Solgar Biotin 10,000 mcg Vegetable Capsules; Pure Encapsulations Biotin Capsules, 8 mg; Puritan's Pride Biotin Tablets, 1000 mcg; Puritan's Pride Super Biotin Capsules, 5000 mcg; Puritan's Pride Super Biotin Softgels, 5000 mcg; Puritan's Pride Ultra Biotin Tablets, 7500 mcg; Puritan's Pride Ultra Mega Biotin Softgels, 10,000 mcg; Sundown Naturals Vegetarian Biotin Tablets, 1000 mcg; Sundown Biotin Gummies, 1000 mcg; Sundown Naturals Super Strength Vegetarian Biotin Tablets, 7500 mcg; and Sundown Naturals Vegetarian Biotin Capsules, 10,000 mcg.

11. By intentionally concealing from consumers the fact that the overwhelming amount of the biotin in its Biotin Supplements is nutritionally valueless, Nestlé deceives consumers into buying products that are almost entirely worthless and unjustly enriches itself in the process.

12. Plaintiff does not, in this action, challenge Nestlé's claims about the purported health benefits of biotin.

13. Plaintiff *does*, however, contend that Nestlé has sold her, and many others, the Biotin Supplements that Nestlé knows to be overwhelmingly worthless from a nutritional perspective, while deliberately concealing that material information from consumers.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. § 1332(d)(2) do not apply.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant conducts substantial business in this District.

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

17. Nestlé is subject to personal jurisdiction in this Court. It regularly sells to consumers in California the Biotin Supplements, both directly and through numerous retailers located in California, and also, upon information and belief, enters into contracts with parties in

California to sell these supplements to consumers in California and nationwide. Plaintiff is also informed and believes that Nestlé maintains office and manufacturing facilities in California.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## THE PARTIES

19. Plaintiff  is, and at all times relevant hereto, was a citizen of the state of California and a resident of San Mateo. She purchased the Nature's Bounty biotin supplement herself, for household use.

20. Plaintiff purchased the biotin supplements for herself from Amazon, Inc., online from her home in San Mateo, California, from approximately 2016 to 2026.

21. When buying the Defendant's biotin supplements, Plaintiff reasonably believed that she had purchased and would be consuming supplements that had nutritional benefits. Prior to purchasing the biotin supplements, Plaintiff saw and relied upon the representations made by Defendant on the labels and packaging of the supplements. When she purchased and consumed the biotin supplements, she was unaware, because of Defendant's deliberate and material misrepresentations and partial misrepresentations, that the overwhelming majority of the supplement had no nutritional value at all.

22. Plaintiff would not have paid the premium price or purchased the biotin supplement if that information had been fully disclosed. Plaintiff would be willing to purchase the Biotin Supplements again if she could be certain the labels and relevant packaging fully disclosed the nutritional benefits and biotin absorption.

23. Nestlé is a Delaware corporation with its principal place of business located in the State of New Jersey.

24. Nestlé markets, distributes, and sells dietary supplements, including the Biotin Supplements, under various brand names, including, without limitation, Nature's Bounty, Solgar, Pure Encapsulations, Garden of Life, Puritan's Pride, and Sundown.

## **FACTUAL ALLEGATIONS**

### **Biotin and the Amount Humans Need Each Day**

25. According to the National Institutes of Health ("NIH") Office of Dietary Supplements, biotin, a "water soluble" "B vitamin, is an essential nutrient that is naturally present in some foods and available as a dietary supplement."[2] "Biotin helps turn the carbohydrates, fats, and proteins in the food [people] eat into the energy [people] need."[3]

26. The U.S. Food and Drug Administration ("FDA"), in a regulation codified at 21 C.F.R. § 101.9(c)(8)(iv), has declared that the Reference Daily Intakes ("RDI") for biotin are as follows:

- For infants through 12 months of age: 6 micrograms ("mcg");
- For children aged one to three years: 8 mcg;
- For adults and children aged four years and over: 30 mcg; and
- For pregnant women and lactating women: 35 mcg.

27. The term "RDI" "refers to the amount of a vitamin or mineral that the FDA recommends for daily consumption." *Howard v. Hain Celestial Grp., Inc.*, 655 F. Supp. 3d 941, 943 (N.D. Cal. 2023), *reconsideration denied,* No. 22-CV-00527-VC, 2023 WL 5333028 (N.D. Cal. Aug. 17, 2023).

---

[2] https://ods.od.nih.gov/factsheets/Biotin-HealthProfessional/
[3] https://ods.od.nih.gov/factsheets/Biotin-Consumer/

28. Likewise, in its "Biotin Fact Sheet for Professionals," the NIH Office of Dietary Supplements identifies the Recommended Dietary Allowances ("RDA") for biotin as follows:[4]

| Life Stage | Recommended Amount |
|---|---|
| Birth to 6 months | 5 mcg |
| Infants 7–12 months | 6 mcg |
| Children 1–3 years | 8 mcg |
| Children 4–8 years | 12 mcg |
| Children 9–13 years | 20 mcg |
| Teens 14–18 years | 25 mcg |
| Adults 19+ years | 30 mcg |
| Pregnant teens and women | 30 mcg |
| Breastfeeding teens and women | 35 mcg |

**Nestlé's Biotin Supplements**

28. Nestlé markets, distributes, and sells the Biotin Supplements under multiple brand names, in multiple dosages. By way of illustration, Nestlé markets, distributes, and sells 10,000 mcg Biotin softgels, 5000 mcg Biotin softgels, 5000 mcg Biotin quick dissolve tablets, 1000 mcg coated tablets, and 1000 mcg Biotin Gummies, all under the Nature's Bounty label.

29. The serving size for Nature's Bounty 10,000 mcg Biotin softgels is "1 softgel."

30. Each serving of Nature's Bounty 10,000 mcg Biotin softgels contains 10,000 mcg of biotin.

31. The label on and packaging of Nature's Bounty 10,000 mcg Biotin softgels states that the "Directions" for the use of that supplement is "for adults, take one (1) softgel daily, preferably with a meal."

32. The serving size for Nature's Bounty 5000 mcg Biotin softgels is "1 softgel."

33. Each serving of Nature's Bounty 5000 mcg Biotin softgels contains 5000 mcg of biotin.

[4] https://ods.od.nih.gov/factsheets/Biotin-HealthProfessional/

34. The label on Nature's Bounty 5000 mcg Biotin softgels states that the "Directions" for the use of that supplement is "for adults, take one (1) softgel daily, preferably with a meal."

35. The serving size for Nature's Bounty 5000 mcg Biotin quick dissolve tablet is "1 quick dissolve tablet."

36. Each serving of Nature's Bounty 5000 mcg Biotin quick dissolve tablet contains 5000 mcg of biotin.

37. The label on Nature's Bounty 5000 mcg Biotin quick dissolve tablet states that the "Directions" for the use of that supplement is "for adults, take one (1) quick dissolve tablet daily, preferably with a meal. Place tablet under tongue for 30 seconds before swallowing."

38. The serving size for Nature's Bounty 1000 mcg Biotin coated tablets is "1 tablet."

39. Each serving of Nature's Bounty 1000 mcg Biotin coated tablets contains 1000 mcg of biotin.

40. The label on Nature's Bounty 1000 mcg Biotin coated tablets states that the "Directions" for the use of that supplement is "for adults, take one (1) tablet up to two times daily, preferably with meals."

41. The serving size for Nature's Bounty Biotin Gummies 1000 mcg is "1 gummy."

42. Each serving of Nature's Bounty Biotin Gummies 1000 mcg contains 1000 mcg of biotin.

43. The label on Nature's Bounty Biotin Gummies 1000 mcg states that the "Directions" for the use of that supplement is "for adults, chew one (1) gummy daily, preferably with a meal."

44. Nestlé's Biotin Supplements, under any of its brand labels, are "dietary supplements" as that term is defined in 21 U.S.C. § 321(ff)(1)(a), which states, in relevant part, that "[t]he term "dietary supplement" means a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: a vitamin[.]"

45. Nestlé's Biotin Supplements are not "drugs" as defined in 21 U.S.C. § 321(g).

46. Nestlé's Biotin Supplements are not "drug products" as defined in 21 C.F.R. § 210(3)(b)(4).

47. Each one of Nestlé's Biotin Supplements contains a disclaimer on the labels and relevant packaging stating, in part, that Nestlé's Biotin Supplements are "not intended to diagnose, treat, cure or prevent any disease."

**The Amounts of Biotin in Each Serving of Nestlé's Biotin Supplements is Excessive Under Federal Law and Settled Standards of Nutritional Science**

48. The amounts of biotin in each serving of Nestlé's Biotin Supplements far exceed both the RDIs for biotin established by the FDA and the RDAs for biotin identified by the NIH.

49. Specifically, one serving of Nestlé's 10,000 mcg biotin supplements contains 33,333% of the RDI and RDA for biotin for adults and children aged four and over.

50. Each serving of Nestlé's 10,000 mcg Biotin Supplements contains 33,133% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

51. Each serving of Nestlé's 8 mg (8,000 mcg) Biotin Supplements contains 26,667% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

52. Each serving of Nestlé's 7,500 Biotin Supplements contains 24,850% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

53. As for Nestlé's 5000 mcg Biotin Supplements, one serving contains 16,667% of the RDI and RDA for biotin for adults and children aged four and over.

54. Each serving of Nestlé's 5000 mcg Biotin Supplements contains 16,467% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

55. One serving of Nestlé's 1000 mcg Biotin Supplements, both tablets and gummies, contains 3,333% of the RDI and RDA for biotin for adults and children aged four and over.

56. Each serving of Nestlé's 1000 mcg Biotin Supplements contains 3,133% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

57. Humans do not need to consume 1000, 5000, 7500, 8000, or 10,000 mcg of biotin supplements daily, as "directed" by Nestlé on the labels of its Biotin Supplements.

58. The vast amount of biotin in each serving of Nestlé's Biotin Supplements is both nutritionally unnecessary for and unusable by consumers.

**Nestlé is Aware that Almost All of the Biotin Content in Each Serving of its Biotin Supplements is Nutritionally Valueless to Consumers**

59. Nestlé knows that the overwhelming amount of biotin in each serving of its Biotin Supplements is of no nutritional value to consumers.

60. In fact, Nestlé admits that fact in *other* dietary supplements that it distributes, markets, and sells to consumers.

61. For example, Nestlé distributes, markets and sells to consumers a multivitamin under the Solgar brand called One Daily Men's Multi, and states on Solgar's website that one serving of that supplement "***meet[s] your daily needs***" and contains "19 essential vitamins and minerals at 100% or above the recommended daily value."[5]

62. Nestlé's Solgar-branded One Daily Men's Multi multivitamin supplements contain only 45 mcg of biotin per serving, which is a minute fraction of the 1000, 5000, and 10,000 mcg per serving of biotin contained in Nestlé's Biotin Supplements.

63. Nestlé therefore acknowledges and represents to the public that one serving each day of 45 mcg of biotin suffices to "meet" men's daily nutritional "needs" and provides them with "100% or above" of their "recommended daily value" of biotin.

64. Nestlé also distributes, markets, and sells a Solgar-branded multivitamin called One Daily Women's Multi, and claims on Solgar's website that one serving of that supplement "***helps women meet their daily nutritional needs***" and contains "18 essential vitamins & minerals at 100% or above the recommended daily value."[6]

---

[5] https://www.solgar.com/products/one-daily-mens-multivitamin-capsules (emphasis supplied).
[6] https://www.solgar.com/products/one-daily-womens-multivitamin-capsules (emphasis supplied).

65. Nestlé's Solgar-branded One Daily Women's Multi multivitamin supplements contain only 45 mcg of biotin per serving.

66. Nestlé therefore acknowledges and represents to the public that one serving each day of 45 mcg of biotin suffices to help "meet" women's daily nutritional "needs" and provides them with "100% or above" of their recommended daily value of biotin.

67. Additionally, Nestlé distributes, markets, and sells Solgar-branded multivitamins geared to women and men aged 50 and over: Solgar One Daily Women's Multi 50+ multivitamins and Solgar One Daily Men's Multi 50+ multivitamins.

68. On the website for Solgar One Daily Women's Multi 50+, Nestlé states that one serving of that supplement is "uniquely formulated to ***meet [the] daily health needs*** for women 50 years and above" and that "[e]ach serving offers women 18 essential vitamins & minerals at 100% or above the recommended daily value."[7]

69. Nestlé's Solgar One Daily Women's Multi 50+ multivitamins contain only 150 mcg of biotin per serving.

70. Nestlé therefore acknowledges and represents to the public that one serving each day of 150 mcg of biotin suffices to "meet" the daily nutritional "needs" of women aged 50 and over and provides them with "100% or above" their recommended daily value of biotin.

71. As for Solgar One Daily Men's Multi 50+, Nestlé states on Solgar's website that one serving of that supplement is "uniquely formulated to ***meet*** daily health ***needs*** for men 50 years and above" and that "each serving offers men 20 essential vitamins & minerals at 100% or above the recommended daily value."[8]

72. Solgar One Daily Men's Multi 50+ multivitamins contain only 75 mcg of biotin per serving.

---

[7] https://www.solgar.com/products/one-daily-womens-multivitamin-50-plus-capsules (emphasis supplied).

[8] https://www.solgar.com/products/one-daily-mens-multivitamin-50-plus-capsules (emphasis supplied).

73. Nestlé therefore acknowledges and represents to the public that one serving each day of 75 mcg of biotin suffices to "meet" the daily nutritional "needs" of men aged 50 and over and provides them with "100% or above" of their recommended daily value of biotin.

74. Nestlé's recognition of the fact that the vast amount of biotin in each serving of its Biotin Supplements is of no nutritional value to humans is also manifested by the representations that it makes to the public regarding its Garden of Life-branded multivitamins.

75. Nestlé distributes, markets, and sells a Garden of Life-branded multivitamin supplement aimed at all family members, called Vitamin Code Family Whole Food Multivitamin. Its packaging and label for that product states that it is "specifically formulated to ***meet the needs*** of adults, teens and kids age 6 and over, providing the nourishment the body craves ***to maintain optimal health and well-being***."[9]

76. Each serving of Garden of Life Vitamin Code Family Whole Food Multivitamin contains only 30 mcg of biotin.

77. Nestlé therefore acknowledges and represents to the public that one serving each day of 30 mcg of biotin suffices to "***meet the needs of adults, teens and kids age 6 and over***" and provides them with the nourishment their bodies "***crave***" to maintain "***optimal health and well-being***."[10]

78. Indeed, 30 mcg of biotin *does*, as the FDA, the NIH, and Nestlé itself acknowledge, suffice to meet the daily nutritional needs of adults, teens, and kids age 6 and over, and provides them with the nourishment their bodies "crave" to maintain "optimal health and well-being."

79. Nestlé's awareness that the overwhelming amounts of biotin in each serving of its Biotin Supplements are nutritionally worthless is further amplified in a blog post on its website for its Solgar-branded multivitamin supplements, where Nestlé states as follows:

---

[9] https://www.gardenoflife.com/products/our-vitamins/multivitamins/vitamin-code-family-multivitamin -vegetarian-capsules (emphasis supplied).

[10] Emphasis supplied.

> Taking a multivitamin is a great way to get the nutrients you need while not overcomplicating your vitamin routine. However, in a world filled with an overwhelming array of multivitamin options, finding the perfect one to suit your unique needs can feel daunting. Whether you're on a quest for better health, enhanced energy, or simply want to cover your nutritional bases, finding the right multivitamin begins with making informed decisions.
>
> *
>
> Let's take a look at some of the most important things to look for in a multivitamin, as well as some of the best multivitamins for men and women.
>
> *
>
> Quality over quantity: ***When selecting a multivitamin, it's not just about cramming in as many nutrients as possible.*** It's about choosing one that delivers essential vitamins and minerals in a bioavailable format that your body can actually use.
>
> *
>
> The first factor to consider when selecting a multivitamin is making sure that it delivers the ***appropriate*** daily value of ingredients. ***The daily value represents the amount of a specific nutrient that the average person needs daily to maintain good health.***
>
> *
>
> ***You should choose a multivitamin with 100% of the daily value of its ingredients***. Different multivitamins may contain different amounts of certain vitamins and minerals, so it is worth checking the labels carefully.[11]

80. One hundred percent of the "daily value" of biotin is 30 mcg for adults and children aged 4 and over, and 35 mcg for pregnant women and lactating women.

81. Nestlé's Biotin Supplements "cram" far more biotin into each serving than "100% of the daily value" of biotin.

82. Nestlé knowingly "crams" more biotin into each serving of its Biotin Supplements than any person actually needs in a day.

**What Happens to All of the Excess Biotin in Nestlé's Biotin Supplements Once Ingested?**

83. By Nestlé's own admission, once ingested, the excess biotin in each serving of Nestlé's Biotin Supplements is not stored in the body but is, instead, "constantly excreted" from the body.

84. Nestlé acknowledges that fact in a blog post appearing on Garden of Life's website titled "B-Complex Essential Nutrients," written by Dawn Thorpe Jarvis, M.S., R.D., L.D.N., in

---

[11] https://www.solgar.com/blog/nutrition/multivitamin-must-haves (emphasis supplied).

which the author states, in part, that "B vitamins are water soluble, are not stored in the body and are constantly excreted."[12]

85. Garden of Life, like Nature's Bounty, is owned by Nestlé.

86. According to Nestlé, Dawn Thorpe Jarvis "is a licensed nutritionist and registered dietitian [and] has more than 30 years of nutrition education experience and obtained a Bachelor of Science degree in Clinical Dietetics in England."

87. Nestlé further acknowledges that all of the excess biotin in each serving of Nestlé's Biotin Supplements is not stored in the body, but is, instead, excreted from the body as waste, in a blog post appearing on its Pure Encapsulation's website titled "How B Vitamins Support Mild Memory Problems Associated with Aging," written by Maria Murphy, RD, LDN and Heidi Harris, RD-N, CD-N, LD-N.[13]

88. Pure Encapsulations, like Nature's Bounty, is owned by Nestlé.

89. In that blog post, the authors write that "B vitamins are water-soluble, meaning that they are readily used by the body and any excess is naturally excreted by the body. Unlike fat-soluble vitamins, such as vitamins A, D, E and K, B vitamins are not stored in the body for later use."

90. Nestlé further acknowledges that the excess biotin in Nestlé's Biotin Supplements is not stored by the body, but is instead excreted as waste, when it states, on its website for its product named Nature's Bounty Complete B Vitamin Complex, that "B vitamins are a group of water-soluble vitamins. Because they are water soluble, they are not stored by the body and need constant replenishment through our diet."[14]

91. In short, all the excess biotin in each serving of Nestlé's Biotin Supplements serves no nutritional purpose, is not stored by the body, and literally goes to waste.

---

[12] https://www.gardenoflife.com/blog/b-complex-essential-nutrients

[13] https://smartq.pureforyou.com/blog/559431155746/how-b-vitamins-support-mild-memory-problems-associated-with-aging

[14] https://www.naturesbounty.co.uk/product/complete-b-vitamin-complex

92. Given Nestlé's acknowledgement that a dietary supplement containing 30 mcg of biotin daily provides consumers the nourishment their bodies "crave to maintain optimal health and well-being," it follows that Nestlé's Biotin Supplements that provide consumers with 1000 mcg of biotin per serving contain 970 mcg of excess biotin.

93. Similarly, Nestlé's Biotin Supplements that provide consumers with 5000 mcg of biotin per serving contain 4970 mcg of excess biotin.

94. And Nestlé's Biotin Supplements that provide consumers with 10,000 mcg of biotin per serving contain 9970 mcg of excess biotin.

**Nestlé Intentionally, Misleadingly and Deceptively Conceals from Consumers the Material Fact that the Overwhelming Amount of Biotin in its Biotin Supplements is Nutritionally Worthless**

95. Among the methods Nestlé uses to promote the sale of its Biotin Supplements to consumers is to tout their purported health benefits on those supplements' labels.

96. Nestlé makes those health-related claims on its Biotin Supplements' labels intending that consumers will rely on them.

97. For instance, bottles of Nature's Bounty 1000, 5000 and 10,000 mcg Biotin Supplements state on the consumer-facing front of its label that those supplements "Support[] Healthy Hair, Skin & Nails" and a bottle of Nature's Bounty Biotin Gummies 1000 mcg states on the front of its label "General Health. Supports Healthy Hair, Skin & Nails."

98. Yet nowhere on any of Nestlé's Nature's Bounty-branded Biotin Supplements' labels or relevant packaging, nor anywhere in Nestlé's advertising and marketing for those supplements, does Nestlé state that the vast amount of the biotin contained in each serving of those supplements is nutritionally worthless.

99. Nestlé knows that the vast amount of the biotin contained in each serving of Nestlé's Biotin Supplements is nutritionally worthless.

100. Yet, despite that fact, Nestlé knowingly and intentionally conceals that material information from consumers because it knows that disclosing it would deter reasonable

consumers from either buying Nestlé's Biotin Supplements altogether or for paying the amounts charged by Nestlé for those largely worthless supplements.

**Consumers Sustain Damage When Buying Nestlé's Biotin Supplements**

101. Given Nestlé's acknowledgment that 30 mcg of biotin suffices to " meet" the daily "needs of adults, teens and kids age 6 and over" and provide them with "the nourishment [their bodies] crave[] to maintain optimal health and well-being," it follows that consumers do not need to consume biotin supplements of anywhere near 1000 mcg or higher each day in order "to maintain optimal health and well-being," and that Nestlé knows that.

102. Consumers who have purchased Nestlé's Biotin Supplements have therefore been monetarily damaged, because the overwhelming amount of what they have paid for is nutritionally valueless and destined to be excreted as waste, unused by the body.

103. For Nestlé's 1000 mcg Biotin Supplements, 970 mcg of the biotin in each serving of those supplements—which amounts to 97% of their total biotin content—are excessive and nutritionally unnecessary.

104. Each serving of Nestlé's 1000 mcg Biotin Supplements contains 32.3 times *more* biotin than the RDI, the RDA, and the amount of biotin *Nestlé itself* acknowledges is necessary to "meet the needs of adults, teens and kids age 6 and over" and provide them with the "nourishment the body craves to maintain optimal health and well-being."

105. Stated otherwise, if 30 mcg of biotin daily suffices to " meet the needs of adults, teens and kids age 6 and over" and provide them with the "nourishment the body craves to maintain optimal health and well-being"—as Nestlé acknowledges it does—taking one of Nestlé's 1000 mcg Biotin Supplements is the equivalent of taking 32 30-mcg biotin supplements *in a single day, every day*, of which only one would be nutritionally necessary.

106. Consumers are therefore damaged in the amount of 97% of the price they paid for each unit of Nestlé's 1000 mcg Biotin Supplements that they purchased.

107. For Nestlé's 5000 mcg Biotin Supplements, 4970 mcg of the biotin in each serving of those supplements—which amounts to 99.4% of their total biotin content—are excessive and nutritionally unnecessary.

108. Each serving of Nestlé's 5000 mcg Biotin Supplements contains 166.7 times more biotin than the RDI, the RDA, and the amount of biotin Nestlé itself acknowledges is necessary to "meet the needs of adults, teens and kids age 6 and over" and provide them with the "nourishment the body craves to maintain optimal health and well-being."

109. Taking one of Nestlé's 5000 mcg Biotin Supplements is the equivalent of taking 167 30-mcg biotin supplements *in a single day, every day,* of which only one would be nutritionally necessary.

110. Consumers are therefore damaged in the amount of 99.4% of the price they paid for each unit of Nestlé's 5000 mcg Biotin Supplements that they purchased.

111. For Nestlé's 10,000 mcg Biotin Supplements, 9970 mcg of the biotin in each serving of those supplements—which amounts to 99.7% of their total biotin content—are excessive and nutritionally unnecessary.

112. Each serving of Nestlé's 10,000 mcg Biotin Supplements contains 333.3 times *more* biotin than the RDI, the RDA, and the amount of biotin Nestlé itself acknowledges is necessary to "meet the needs of adults, teens and kids age 6 and over" and provide them with the "nourishment the body craves to maintain optimal health and well-being."

113. Taking one of Nestlé's 10,000 mcg Biotin Supplements is the equivalent of taking 333 30-mcg biotin supplements *in a single day, every day*, of which only one would be nutritionally necessary.

114. Consumers are therefore damaged in the amount of 99.7% of the price they paid for each unit of Nestlé's 10,000 mcg Biotin Supplements that they purchased.

115. Reasonable consumers do not know when buying Nestlé's Biotin Supplements that the overwhelming amount of the biotin in each serving of Nestlé's Biotin Supplements is nutritionally valueless.

116. Instead, reasonable consumers believe, based on the fact that Nestlé is selling its Biotin Supplements in the first place, coupled with the fact that Nestlé ascribes to those supplements' specific health benefits, that *all* of the biotin content in each serving of Nestlé's Biotin Supplements is of nutritional value to consumers.

117. But unfortunately for and unbeknownst to consumers, that is not the case. The overwhelming amount of biotin contained in each serving of Nestlé's Biotin Supplements is nutritionally worthless to consumers, although highly profitable for Nestlé.

**The FDA Does Not Regulate the Amount of a Dietary Ingredient That Can Be Contained in a Serving of a Dietary Supplement**

118. Plaintiff's claims against Nestlé in this action are not preempted by federal law.

119. No federal statute or regulation regulates or addresses the amount of biotin that can be included in a dietary supplement.

120. On the contrary, the FDA affirmatively states that it does *not* regulate the amount of any dietary ingredient—including biotin—that may be included in a serving of a dietary supplement.

121. To quote the FDA, " [o]ther than the manufacturer's responsibility to meet the safety standards and labeling requirements for dietary supplements and to comply with current good manufacturing regulations, ***there are no laws or regulations that limit the serving size of a dietary supplement or the amount of a dietary ingredient that can be in a serving of a dietary supplement***. This decision is made by the manufacturer and does not require FDA approval."[15]

122. Plaintiff's claims in this action are therefore not preempted as a matter of law.

**Defendant's Packaging Misled Reasonable Consumers Based on the Overall Impression, Material Misrepresentations, and Partial Misrepresentations**

123. Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Biotin Supplements throughout the United States, including in California.

---

[15] https://www.fda.gov/food/information-consumers-using-dietary-supplements/questions-and-answers-dietary-supplements (emphasis supplied).

124. Defendant had a duty to ensure that the Biotin Supplements and their packaging are not deceptive.

125. Defendant breached that duty, and continues to breach that duty, by making representations about the nutritional benefits the Biotin Supplements provide that are false and are materially misleading.

126. The Biotin Supplements are available at numerous retail and online outlets. The Biotin Supplements are widely advertised.

127. Despite knowing that the Biotin Supplements contain an excessive amount of biotin that is nutritionally valueless, Defendant markets the Biotin Supplements in a manner that conveys to reasonable consumers, including Plaintiff, that the Products provide health benefits.

128. The Biotin Supplements' packaging misrepresentations and partial misrepresentations (collectively, "Claims") include, but are not limited to the following:

- "Supports Healthy Hair, Skin & Nails"
- "General Health. Supports Healthy Hair, Skin & Nails"

**Plaintiff's reliance was reasonable and foreseen by Defendant**

129. Plaintiff read and relied upon the packaging of the Biotin Supplements when making her purchasing decisions. Had she known Defendant misrepresented and partially misrepresented the quality and nutritiousness of the Products by failing to disclose the Biotin Supplements contained an excessive amount of nutritionally valueless biotin, she would not have purchased the Biotin Supplements or paid a premium price.

130. A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

**PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS**

131. Defendant knew that reasonable consumers such as Plaintiff and the proposed Class would be the end purchasers of the Biotin Supplements and the targets of its advertising, marketing, packaging, and statements.

132. Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Biotin Supplements, including Plaintiff and the proposed Class.

133. Defendant directly marketed to Plaintiff and the proposed Class through its packaging.

## APPLICABILITY OF EQUITABLE TOLLING AND THE DISCOVERY RULE TO THE STATUTE OF LIMITATIONS

134. Fraudulent concealment and/or the discovery rule toll Plaintiff's claims.

135. The statute of limitations is tolled for all of Plaintiff's statutory consumer protection and common law claims due to Defendant's fraudulent concealment that the Biotin Supplements contained nutritionally useless amounts of biotin. Defendant intentionally concealed these material facts from Plaintiff.

136. Defendant knew the nutritional value of the biotin in the supplement was a material consideration for any consumer of the Biotin Supplements.

137. Defendant violated the relevant state consumer fraud statutes by deceiving customers as to the true nature, quality, and potential benefits of the Biotin Supplements.

138. Based on Defendant concealing and misrepresenting material facts to Plaintiff, Plaintiff could not reasonably discover that the Biotin Supplements contained nutritionally useless excess biotin.

139. Plaintiff did not know that the Biotin Supplements contained nutritionally useless excess biotin. Instead, Defendant only represented that the Biotin Supplements were nutritious and made of high-quality ingredients to support healthy hair, skin, and nails.

## CLASS ACTION ALLEGATIONS

140. Plaintiff brings this action individually and on behalf of the following class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who are residents of California who, from May 14, 2023 to the present, purchased the Biotin Supplements for household use, and not for resale (the "Class").

141. Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

142. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation, and the members of the Class are easily ascertainable.

143. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Class in a single action will provide substantial benefits to the parties and Court.

144. Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a) whether Defendant owed a duty of care;

(b) whether Defendant owed a duty to disclose;

(c) whether Defendant misrepresented and partially misrepresented the amount of biotin that offers benefits and the nutritiousness of the supplements by failing to disclose the amount of biotin that can be absorbed in a single dose;

(d) whether the claims of the Plaintiff and the Class serve a public benefit;

(e) whether Defendant's packaging is false, deceptive, and misleading based on the Claims;

(f) whether the Claims are material to a reasonable consumer;

(g) whether the Claims are likely to deceive a reasonable consumer;

(h) whether Defendant had knowledge that Claims were material and false, deceptive, and/or misleading;

(i) whether Defendant breached its duty of care;

(j) whether Defendant breached its duty to disclose;

(k) whether Defendant violated the laws of the State of California;

(l) whether Defendant engaged in unfair trade practices;

(m) whether Defendant engaged in false advertising;

(n) whether Plaintiffs and Class members are entitled to actual, statutory, and punitive damages; and

(o) whether Plaintiff's and members of the Class are entitled to declaratory and injunctive relief.

145. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harm are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

146. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

147. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

148. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

149. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

150. As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the Unfair Competition Law, California Business & Professions Code § 17200, *et seq*., Against Defendant on Behalf of Plaintiff and the Class**

151. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

152. The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

153. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

154. As set forth herein, Defendant's material misrepresentations and partial misrepresentations related to the Products are likely to deceive reasonable consumers and the public. Specifically, Defendant misleadingly marketed to reasonable consumers that all the biotin in the Products was nutritionally beneficial to consumers based on the Claims on the Products' packaging.

**Unlawful**

155. As alleged herein, Defendant has advertised the Biotin Supplements with misrepresentations and partial misrepresentations such that Defendant's actions violate at least the following laws:

- The Consumers Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code §§ 1750, *et seq*.; and
- The False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

156. Because FDA regulations include no requirement that the public be likely to experience deception, and thus, the "reasonable consumer test" is not an element of the FDA regulations, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's unlawful acts.

**Unfair**

157. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

158. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

159. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid. Specifically, the increase in profits obtained by Defendant through the misleading labeling does not outweigh the harm to Plaintiff and members of the Class who were deceived into purchasing the Biotin Supplements unaware that the overwhelming majority of biotin in the supplement is nutritionally useless. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the amount of biotin needed and its absorption into the human body, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Defendant as it would have cost it only minimally to indicate to consumers that the supplements contain far more biotin than can be absorbed in the body, and that any excess will be excreted as waste.

160. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unsuspecting consumers.

161. Plaintiff and other members of the Class are likely to continue to be damaged by Defendant's deceptive trade practices because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

162. Defendant's conduct caused and continues to cause substantially injury to Plaintiff and the other members of the Class. Plaintiff suffered injury in fact as a result of Defendant's unlawful conduct.

163. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

164. Plaintiff also seeks an order for the restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful competition.

165. Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or the UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's behavior.

**COUNT II**

**Violation of California False Advertising Law, California Business & Professions Code § 17500, *et seq*., Against Defendant on Behalf of Plaintiff and the Class**

166. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

167. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

168. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

169. As alleged herein, specifically, Defendant misleadingly marketed to reasonable consumers that the Biotin Supplements provided nutritional benefits when the overwhelming majority of the biotin in the supplements provided no nutritional benefits and was excreted as waste. Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein

because Plaintiff purchased the Products in reliance on Defendant's false and misleading marketing claims stating or suggesting that the Products provide nutritional benefits.

170. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

171. Defendant profited from the sale of the falsely and deceptively advertised Products to unsuspecting consumers.

172. As a result, Plaintiff, members of the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

173. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and members of the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

174. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and members of the Class monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies under the CLRA are more limited than the equitable remedies under the FAL, and are therefore inadequate.

## COUNT III
**Fraud by Misrepresentation Against Defendant on Behalf of Plaintiff and the Class**

175. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

176. Defendant's Claims on the Products' packaging to Plaintiff and members of the Class gave the impression that the Biotin Supplements were of high quality and nutritious, information that is material to Plaintiff and members of the Class.

177. The Claims by Defendant were false because an overwhelming amount of biotin in the supplements was excessive and provided no nutritional benefits.

178. Defendant knew the Claims were false when Defendant made them because:

(a) Defendant was in a superior position to know the true state of facts about its Biotin Supplements;

(b) Defendant was in a superior position to know the nature of the ingredients, characteristics, dosage, and benefits of the biotin in its supplements for consumption by consumers; and

(c) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn about the characteristics of biotin, biotin's absorption as a supplement, and the benefits without Defendant disclosing it on the Biotin Supplements' packaging.

179. Defendant intended that the Plaintiff and members of the Class rely on the Claims because as a supplement manufacturer, Defendant is in a special position of trust upon which consumers rely. Additionally, Defendant knew or should have known the Claims would induce Plaintiff and the Class to purchase the Biotin Supplements.

180. The Plaintiff and members of the Class reasonably relied on the Claims because Defendant knows its customers trust the quality of its products and expect Defendant's Biotin Supplements to provide nutritional benefits. Defendant also knows that consumers seek out and wish to purchase supplements that possess high quality ingredients and provide nutritional benefits, and that these consumers will pay for supplements that they believe possess these qualities.

181. The Plaintiff and members of the Class were harmed as a direct and proximate result of Defendant's conduct. Plaintiff and the Class suffered actual damages by: (1) paying a premium price for Products they reasonably believed were of high quality and provided

nutritional benefits; (2) purchasing Products they would not have had the true quality and nutritiousness of the dosage of biotin in the Biotin Supplements been disclosed; and/or (3) receiving Biotin Supplements that the overwhelming majority of the biotin was nutritionally worthless because the overwhelming majority could not be absorbed and was excreted as waste.

182. The Plaintiff's and members of the Class's reliance on Defendant's representations was a substantial factor causing harm to the Plaintiff and members of the Class. The detriment is evident from the true quality, characteristics, and nature of the ingredients of the Biotin Supplements, which is misleading when compared to the Biotin Supplements' packaging and represented by Defendant and inherently harmed consumers of the Biotin Supplements, such as Plaintiff and the Class.

183. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV

### Negligent Misrepresentation Against Defendant on Behalf of Plaintiff and the Class

184. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

185. Defendant marketed the Products in a manner conveying to reasonable consumers that the Biotin Supplements provide nutritional benefits to consumers.

186. Defendant's Claims are material to a reasonable consumer because they relate to human health and food safety. Reasonable consumers would attach importance to such Claims and would be induced to act thereon in making purchasing decisions. Defendant intends that Plaintiff and other consumers rely on the Claims, as evidenced by the intentional and conspicuous placement of the Claims on the labels.

187. In selling the Products, Defendant acted in the ordinary course of its business and had pecuniary interested in Plaintiff and other members of the Class purchasing the Products.

188. Defendant owed a duty of care to Plaintiff and the Class Members not to provide them false or incomplete information when they were making their purchasing decisions regarding the Products.

189. Defendant knew or had been negligent in not knowing that the Products contained excessive amounts of biotin. Defendant had no reasonable grounds for believing the Claims were not false and misleading.

190. Defendant negligently marketed that the Products provided nutritional benefits based on the Claims.

191. Plaintiff and other members of the Class have reasonably and justifiably relied on the Claims when purchasing the Products and, had the correct facts been known, would not have purchased the Products at the prices at which they were offered (or at all).

192. Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and other members of the Class have suffered economic losses and other general and specific damages, in the amount of the Products' purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT V**
**Unjust Enrichment Against Defendant on Behalf of Plaintiff and the Class**

193. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

194. Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Products, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

195. It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

196. As a result, Plaintiff and members of the Class are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B. An order enjoining Defendant from selling the Biotin Supplements until biotin dosage absorption is disclosed;

C. An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

D. An order awarding declaratory relief, and any further injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's conduct;

E. An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the state laws, plus pre- and post-judgment interest thereon;

F. An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G. An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

H. An order requiring Defendant to pay punitive damages on any count so allowable;

I. An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 18, 2026

HECHT PARTNERS LLP

By: /s/ *Rebecca Anne Peterson*
REBECCA A. PETERSON (#241858)
KRISTA K. FREIER
CATHERINE PETERSON
1650 W. 82nd Street, Suite 880
Bloomington, Minnesota 55431
Telephone: (612) 778-9595
E-mail: rpeterson@hechtpartners.com
kfreier@hechtpartners.com
cpeterson@hechtpartners.com

WEXLER BOLEY & ELGERSMA, LLP
KARA A. ELGERSMA
ANDREW D. YODER
311 S. Wacker, Suite 5450
Chicago, Illinois 60606
Telephone: (312) 346-2222
Email: kae@wbe-llp.com
ay@wbe-llp.com

***Counsel for Plaintiff and the Proposed Class***