HECHT PARTNERS LLP
REBECCA A. PETERSON (#241858)
1650 W. 82nd Street, Suite 880
Bloomington, Minnesota 55431
Telephone: (612) 778-9595
E-mail: rpeterson@hechtpartners.com

Counsel for Plaintiff and the Class
(Additional Counsel listed on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

YOLANDA PITRE, on behalf of herself and all others similarly situated,

Plaintiff,

v.

NESTLÉ HEALTH SCIENCE US HOLDINGS, INC.,

Defendant.

Case No. 3:26-cv-04652-RFL

**SECOND AMENDED CLASS ACTION COMPLAINT**

1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)
2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)
3. Fraud by Misrepresentation
4. Negligent Misrepresentation
5. Unjust Enrichment

**DEMAND FOR JURY TRIAL**

## SECOND AMENDED CLASS ACTION COMPLAINT

1. Plaintiff Yolanda Pitre ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Second Amended Class Action Complaint ("Complaint") against Defendant Nestlé Health Science US Holdings, Inc. ("Defendant" or "Nestlé"), for its knowing, reckless, negligent, and/or intentional practice of misrepresenting and partially misrepresenting that Nestlé's high-dose biotin supplements were valuable when, in fact, the overwhelming amount of the biotin in these Biotin Supplements is nutritionally valueless. Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of the nutritional benefits and limitations on the Products' labels and relevant packaging, and restoring monies to the members of the proposed Class. Plaintiff alleges the following based upon personal knowledge as to herself, as well as investigation by her counsel, and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2. Biotin, also known as vitamin B7, is an essential human nutrient.

3. Biotin supplements are among the most widely sold dietary supplements in the United States.

4. Nestlé, a Delaware corporation with its principal place of business in New Jersey, is one of the largest marketers, distributors, and sellers of biotin supplements in the United States.

5. Nestlé distributes, markets, and sells biotin supplements in doses of 1000 mcg, 5000 mcg, 7500 mcg, 8mg, and 10,000 mcg, as well as formulations with "Hair, Skin, and Nails" in the names, under various brand names that it owns, including, without limitation, Nature's Bounty, Pure Encapsulations, Solgar, Puritan's Pride, and Sundown (collectively, "Products" or "Biotin Supplements").

6. The Biotin Supplements include products in which biotin is the only listed dietary ingredient (“Standalone Biotin Supplements”)[1] and others in which biotin is the featured dietary ingredient with up to three additional dietary ingredients (“Hair, Skin & Nails Supplements”)[2].

7. The Biotin Supplements are sold throughout the United States, including in California, and are widely available for sale to consumers at many brick-and-mortar stores and on the Internet.

8. Nestlé promotes the sale of its Biotin Supplements by making various health claims about them on the Products’ labels and relevant packaging, and also in Nestlé’s advertising.

9. For example, Nestlé proclaims on principal display panels that the Biotin Supplements, in the doses listed on those panels, support healthy hair, skin, and nails.

---

[1] Standalone Biotin Supplements include: Nature’s Bounty Biotin Gummies, 1000 mcg; Nature’s Bounty Biotin Coated Tablets, 1000 mcg; Nature’s Bounty Biotin Quick Dissolve Tablets, 5000 mcg; Nature’s Bounty Biotin Rapid Release Softgels, 5000 mcg; Nature’s Bounty Biotin Rapid Release Softgels, 10,000 mcg; Solgar Biotin 1000 mcg Vegetable Capsules; Solgar Biotin 5000 mcg Vegetable Capsules; Solgar Biotin 10,000 mcg Vegetable Capsules; Pure Encapsulations Biotin Capsules, 8 mg; Puritan’s Pride Biotin Tablets, 1000 mcg; Puritan’s Pride Super Biotin Capsules, 5000 mcg; Puritan’s Pride Super Biotin Softgels, 5000 mcg; Puritan’s Pride Ultra Biotin Tablets, 7500 mcg; Puritan’s Pride Ultra Mega Biotin Softgels, 10,000 mcg; Sundown Naturals Vegetarian Biotin Tablets, 1000 mcg; Sundown Biotin Gummies, 1000 mcg; Sundown Naturals Super Strength Vegetarian Biotin Tablets, 7500 mcg; and Sundown Naturals Vegetarian Biotin Capsules, 10,000 mcg.

[2] Hair, Skin & Nails Supplements include: Nature’s Bounty Optimal Solutions Extra Strength Hair, Skin & Nails Softgels Advanced (“Softgels Advanced”); Nature’s Bounty Optimal Solutions Hair, Skin & Nails Gummies Advanced (“Gummies Advanced”); Nature’s Bounty Optimal Solutions Hair, Skin & Nails Coated Caplets (“Caplets”); and Nature’s Bounty Optimal Solutions Hair, Skin & Nails Gummies (“Gummies”).




10. Nestlé makes these health claims in an effort to entice consumers to buy its Biotin Supplements, while at the same time deliberately concealing from consumers facts about those supplements that would be vitally important to reasonable consumers when deciding whether to buy them.

11. Specifically, the amount of biotin in the Products exceeds, by a staggering degree, the amount of biotin humans need to consume each day to support their health. Beyond need, nearly all of the biotin in the Products is nutritionally useless to consumers, according to the U.S. Food and Drug Administration ("FDA"), the National Institutes of Health ("NIH"), and Nestlé itself.

12. In fact, Nestlé knows, and has publicly acknowledged, that humans of all ages need vastly *less* biotin each day to provide them with optimal health and well-being than the amounts contained in its Biotin Supplements.

13. Nestlé also knows that humans cannot store, or gain any benefit from, nearly all of the biotin contained in the Products. All of the excess biotin (nearly all that the Products contain) is excreted as waste.

14. Nestlé's labeling, packaging, and advertising for the Biotin Supplements misleads reasonable consumers to believing that the more biotin one consumes, the more health benefits he

or she will attain. Put another way, Nestlé misleads reasonable consumers into believing that all of the biotin contained in the Products is nutritionally beneficial, when in fact, the vast majority is not.

15. By concealing from consumers the fact that the overwhelming amount of the biotin in its Biotin Supplements is nutritionally valueless, Nestlé deceives consumers into buying products that are almost entirely worthless and unjustly enriches itself in the process.

16. Plaintiff contends that Nestlé has sold her, and many others, the Biotin Supplements that Nestlé knows to be overwhelmingly worthless from a nutritional perspective, while deliberately concealing that material information from consumers.

17. Plaintiff does not, in this action, contend that the nutrient biotin does not promote human health at all or that the nutrient biotin does not support the health of hair, skin, and nails.

18. Plaintiff brings this action seeking injunctive and monetary relief on behalf of the proposed Class (defined herein) to include selling biotin supplements in doses which are not almost entirely without nutritional value and which are appropriately priced to reflect the massive reduction in those amounts as compared to the Biotin Supplements and restoring monies to the members of the Class that were improperly obtained by Nestlé through its misleading conduct.[3]

## JURISDICTION AND VENUE

19. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. § 1332(d)(2) do not apply.

[3] Plaintiff sent a letter to Nestlé dated May 14, 2026, notifying it of the conduct described in this Complaint that violates California laws, including the California Consumers Legal Remedies Act and the California Unfair Competition Law. Plaintiff further provided that letter directly to Nestlé's counsel on June 16, 2026.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant conducts substantial business in this District.

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

22. Nestlé is subject to personal jurisdiction in this Court. It regularly sells the Biotin Supplements to consumers in California, both directly and through numerous retailers located in California, and also, upon information and belief, enters into contracts with parties in California to sell these supplements to consumers in California and nationwide. Plaintiff is also informed and believes that Nestlé maintains office and manufacturing facilities in California.

23. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## THE PARTIES

24. Plaintiff Yolanda Pitre is, and at all times relevant hereto, was a citizen of the state of California and a resident of San Mateo. She purchased the Nature's Bounty 10,000 mcg biotin supplement herself, for household use.

25. Plaintiff purchased the Biotin Supplements for herself from Amazon, Inc., online from her home in San Mateo, California, from approximately 2016 to 2026.

26. When buying the Product, Plaintiff Pitre reasonably believed that all of the dietary ingredients in the Biotin Supplements would provide her with nutritional value.

27. Prior to purchasing the Biotin Supplements, Plaintiff saw and relied upon the representations made by Defendant on the labels and packaging of the Products.

28. When Plaintiff purchased and consumed the Products, she reasonably believed that all of the biotin in each serving of the Biotin Supplements would provide her with nutritional value and support the health of her hair, skin, and nails. She was unaware, because of Defendant's deliberate and material misrepresentations and partial misrepresentations, that the overwhelming majority of the biotin provided no nutritional value at all.

29. Plaintiff would not have paid the premium price or purchased the Biotin Supplements had Nestlé disclosed that almost all of the biotin in the Products was excessive and would provide no nutritional value whatsoever.

30. Plaintiff would be willing to purchase the Biotin Supplements again if she could be certain those supplements did not contain vast amounts of excessive and nutritionally valueless biotin, and, instead, the amount of biotin that users need and can use each day to maintain optimal health and well-being, according to Nestlé's own acknowledgments.

31. Nestlé is a Delaware corporation with its principal place of business located in the State of New Jersey.

32. Nestlé markets, distributes, and sells dietary supplements, including the Biotin Supplements, under various brand names, including, without limitation, Nature's Bounty, Solgar, Pure Encapsulations, Garden of Life, Puritan's Pride, and Sundown.

## FACTUAL ALLEGATIONS

33. The popularity of biotin supplements has soared among the general public because manufacturers, distributors, and sellers of biotin supplements, including Nestlé, actively and continually promote biotin supplements as enhancing their users' beauty routine and, in particular, supporting the health and appearance of hair, skin, and nails.

34. To quote from Nestlé, biotin "support[s] beautiful hair, glowing skin, and healthy nails."[4]

[4] https://naturesbounty.com/products/advanced-hair-skin-and-nails-pectin-gummies.

35. Nestlé's Biotin Supplements, under any of its brand labels, are "dietary supplements" as that term is defined in 21 U.S.C. § 321(ff)(1)(a), which states, in relevant part, that "[t]he term 'dietary supplement' means a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: a vitamin[.]"

36. Nestlé's Biotin Supplements are not "drugs" as defined in 21 U.S.C. § 321(g).

37. Nestlé's Biotin Supplements are not "drug products" as defined in 21 C.F.R. § 210(3)(b)(4).

38. Each one of Nestlé's Biotin Supplements contains a disclaimer on the labels and relevant packaging stating, in part, that Nestlé's Biotin Supplements are "not intended to diagnose, treat, cure or prevent any disease."

39. Nestlé packages, labels, markets, advertises, formulates, manufactures, distributes, and sells the Biotin Supplements throughout the United States, including in California.

40. Nestlé has a duty to ensure that the Biotin Supplements and their packaging are not deceptive.

41. Nestlé breached that duty, and continues to breach that duty, through its representations and partial misrepresentations that are false and are materially misleading.

42. The Biotin Supplements are available at numerous retail and online outlets and are widely advertised.

43. Nestlé's Standalone Biotin Supplements are distributed, marketed, and sold under various brand names, including "Nature's Bounty," and are sold in doses ranging from 1000 mcg to 10,000 mcg per serving.

44. Nestlé's Hair, Skin & Nails Supplements contain biotin and other dietary ingredients, but biotin is the only dietary ingredient that Nestlé prominently identifies on the principal display panels of those supplements.

45. Biotin is the only dietary ingredient whose dose per-serving is identified on the principal display panels of Nestlé's Hair, Skin & Nails Supplements for consumers to see.

46. Nestlé's Biotin Supplements are widely sold throughout the United States and are available for sale to consumers at many brick-and-mortar stores and multiple online retail channels.

47. Nestlé promotes the sale of the Biotin Supplements by making various health claims about them on the supplements' principal display panels. In particular, Nestlé represents to consumers on those panels that those supplements, in the doses identified on those panels, support healthy hair, skin, and nails.

48. At the same time as Nestlé makes these health claims on the principal display panels, Nestlé conceals a fact about the Biotin Supplements which consumers would deem material to their purchase decisions.

49. Nestlé conceals the fact that the overwhelming amount of biotin in each serving of the Biotin Supplements is nutritionally valueless.

**Biotin and the Amount Humans Need Each Day**

50. According to the NIH Office of Dietary Supplements, biotin, a "water soluble" "B vitamin, is an essential nutrient that is naturally present in some foods and available as a dietary supplement."[5] "Biotin helps turn the carbohydrates, fats, and proteins in the food [people] eat into the energy [people] need."[6]

51. The FDA, in a regulation codified at 21 C.F.R. § 101.9(c)(8)(iv), has declared that the Reference Daily Intakes ("RDI") for biotin are as follows:

- For infants through 12 months of age: 6 micrograms ("mcg");
- For children aged one to three years: 8 mcg;
- For adults and children aged four years and over: 30 mcg; and
- For pregnant women and lactating women: 35 mcg.

---

[5] https://ods.od.nih.gov/factsheets/Biotin-HealthProfessional/.
[6] https://ods.od.nih.gov/factsheets/Biotin-Consumer/.

52. The term "RDI" "refers to the amount of a vitamin or mineral that the FDA recommends for daily consumption."[7]

53. Likewise, in its "Biotin Fact Sheet for Professionals," the NIH Office of Dietary Supplements identifies the Recommended Dietary Allowances ("RDA") for biotin as follows:[8]

| Life Stage | Recommended Amount |
|---|---|
| Birth to 6 months | 5 mcg |
| Infants 7–12 months | 6 mcg |
| Children 1–3 years | 8 mcg |
| Children 4–8 years | 12 mcg |
| Children 9–13 years | 20 mcg |
| Teens 14–18 years | 25 mcg |
| Adults 19+ years | 30 mcg |
| Pregnant teens and women | 30 mcg |
| Breastfeeding teens and women | 35 mcg |

**Nestlé's Standalone Biotin Supplements**

54. Nestlé markets, distributes, and sells its Standalone Biotin Supplements under multiple brand names, in multiple dosages. By way of illustration, Nestlé markets, distributes, and sells 10,000 mcg Biotin softgels, 5000 mcg Biotin softgels, 5000 mcg Biotin quick dissolve tablets, 1000 mcg coated tablets, and 1000 mcg Biotin Gummies, all under the Nature's Bounty label.

---

[7] *Howard v. Hain Celestial Grp., Inc.*, 655 F. Supp. 3d 941, 943 (N.D. Cal. 2023), *reconsideration denied,* No. 22-CV-00527-VC, 2023 WL 5333028 (N.D. Cal. Aug. 17, 2023).

[8] https://ods.od.nih.gov/factsheets/Biotin-HealthProfessional/.

55. Each of Nestlé's Standalone Biotin Supplements states, on its principal display panel, the dose of biotin in each serving of that supplement and represents to consumers that the supplement "Helps Support Healthy Hair, Skin & Nails." One example is:




56. The serving size for Nature's Bounty 10,000 mcg Biotin softgels is "1 softgel."

57. Each serving of Nature's Bounty 10,000 mcg Biotin softgels contains 10,000 mcg of biotin.

58. The label on and packaging of Nature's Bounty 10,000 mcg Biotin softgels states that the "Directions" for the use of that supplement is "for adults, take one (1) softgel daily, preferably with a meal."

59. The serving size for Nature's Bounty 5000 mcg Biotin softgels is "1 softgel."

60. Each serving of Nature's Bounty 5000 mcg Biotin softgels contains 5000 mcg of biotin.

61. The label on Nature's Bounty 5000 mcg Biotin softgels states that the "Directions" for the use of that supplement is "for adults, take one (1) softgel daily, preferably with a meal."

62. The serving size for Nature's Bounty 5000 mcg Biotin quick dissolve tablet is "1 quick dissolve tablet."

63. Each serving of Nature's Bounty 5000 mcg Biotin quick dissolve tablet contains 5000 mcg of biotin.

64. The label on Nature's Bounty 5000 mcg Biotin quick dissolve tablet states that the "Directions" for the use of that supplement is "for adults, take one (1) quick dissolve tablet daily, preferably with a meal. Place tablet under tongue for 30 seconds before swallowing."

65. The serving size for Nature's Bounty 1000 mcg Biotin coated tablets is "1 tablet."

66. Each serving of Nature's Bounty 1000 mcg Biotin coated tablets contains 1000 mcg of biotin.

67. The label on Nature's Bounty 1000 mcg Biotin coated tablets states that the "Directions" for the use of that supplement is "for adults, take one (1) tablet up to two times daily, preferably with meals."

68. The serving size for Nature's Bounty Biotin Gummies 1000 mcg is "1 gummy."

69. Each serving of Nature's Bounty Biotin Gummies 1000 mcg contains 1000 mcg of biotin.

70. The label on Nature's Bounty Biotin Gummies 1000 mcg states that the "Directions" for the use of that supplement is "for adults, chew one (1) gummy daily, preferably with a meal."

71. Nestlé directs consumers who buy the Standalone Biotin Supplements to ingest the 1000, 5000, and 10,000 micrograms-of-biotin-per-serving supplements every day, even though the RDI for biotin for adults and children aged 4 years and over is, according to the FDA, only 30 mcg, and 35 mcg for pregnant women and lactating women, and the RDA for biotin, as established by the NIH, is much the same.

**Nestlé's Hair, Skin & Nails Supplements**

72. There are a variety of Hair, Skin & Nails Supplements sold under the Nature's Bounty brand name.

73. To entice consumers to buy its Hair, Skin & Nails Supplements, Nestlé informs consumers on the principal display panels of each of those supplements that its Hair, Skin & Nails product line is the "#1 BRAND FOR HAIR, SKIN & NAILS."

74. Although the Hair, Skin & Nails Supplements contain both biotin and other dietary ingredients, biotin is the featured dietary ingredient in the Hair, Skin & Nails Supplements.

75. Biotin is the most prominently identified dietary ingredient on the Hair, Skin & Nails Supplements' principal display panels.

76. For example, the following is an accurate image of the principal display panel of Softgels Advanced:




77. The principal display panel represents that Softgels Advanced have "2x Biotin" with a reference to the back panel indicating a comparison to the Gummies and indicating that the supplement provides 5000 mcg of biotin per serving.

78. Biotin is the only dietary ingredient whose dose per-serving is listed on the principal display panel.

79. On the Supplement Facts label for Softgels Advanced, Nestlé directs consumers to take one serving of Softgels Advanced daily, which consists of three softgels.

80. The following is an accurate image of the principal display panel of Gummies Advanced:




81. The principal display panel represents that Gummies Advanced have "Over 2x Biotin" with a reference to the back panel indicating a comparison to the Gummies and indicating that the supplement provides 6000 mcg of biotin per serving.

82. Biotin is the only dietary ingredient whose dose per-serving is listed on the principal display panel.

83. On the Supplement Facts label for Gummies Advanced, Nestlé directs consumers to take one serving of Gummies Advanced daily, which consists of two gummies.

84. The following is an accurate image of Caplet's principal display panel:




85. The principal display panel represents that Caplets provide 3000 mcg of biotin per serving.

86. Biotin is the only dietary ingredient whose dose per-serving is listed on the principal display panel.

87. On the Supplement Facts label for Caplets, Nestlé directs consumers to take one serving of Caplets daily, which consists of three caplets.

88. The following is an accurate image of Gummies' principal display panel:



89. The principal display panel represents that Gummies provide 2500 mcg of biotin per serving.

90. Biotin is the only dietary ingredient whose dose per-serving is listed on the principal display panel.

91. On the Supplement Facts label for Gummies, Nestlé directs consumers to take one serving of Gummies daily, which consists of two gummies.

92. Nestlé therefore directs consumers who buy its Hair, Skin & Nails Supplements to ingest those 2500, 3000, 5000, and 6000 mcg-of-biotin-per-serving supplements every single day, even though the RDI for biotin for adults and children ages 4 years and over is, according to the FDA, only 30 mcg, and 25 mcg for pregnant women and lactating women, and the RDA for biotin, established by the NIH is much the same.

93. Nestlé's prominent placement of the word "biotin" on the principal display panels of its Hair, Skin & Nails Supplements, coupled with the fact that biotin is the *only* dietary ingredient whose dose-per-serving is explicitly identified on those panels, indicates that Nestlé deems the biotin content and dose levels of its Hair, Skin & Nails Supplements to be their main selling point to consumers.

94. Reasonable consumers view and rely on the prominence of "biotin" on the principal display panels of the Hair, Skin & Nails Supplements to mean that the presence of biotin, in the doses provided, will enhance the health and appearance of their hair, skin, and nails.

**The Amounts of Biotin in Each Serving of Nestlé's Biotin Supplements is Excessive Under Federal Law and Settled Standards of Nutritional Science**

95. The amounts of biotin in each serving of Nestlé's Biotin Supplements far exceed both the RDIs for biotin established by the FDA and the RDAs for biotin identified by the NIH.

96. Specifically, one serving of Nestlé's 10,000 mcg Biotin Supplements contains 33,333% of the RDI and RDA for biotin for adults and children aged four and over.

97. Each serving of Nestlé's 10,000 mcg Biotin Supplements contains 33,233% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

98. One serving of Nestlé's 8 mg (8000 mcg) Biotin Supplements contains 26,667% of the RDI and RDA of that vitamin for adults and children aged four and over.

99. Each serving of Nestlé's 8 mg (8000 mcg) Biotin Supplements contains 26,567% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

100. One serving of Nestlé's 7500 mcg Biotin Supplements contains 25,000% of the RDI and RDA for biotin for adults and children aged four and over.

101. Each serving of Nestlé's 7500 Biotin Supplements contains 24,900% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

102. As for Nestlé's 5000 mcg Biotin Supplements, one serving contains 16,667% of the RDI and RDA for biotin for adults and children aged four and over.

103. Each serving of Nestlé's 5000 mcg Biotin Supplements contains 16,567% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

104. One serving of Nestlé's 1000 mcg Biotin Supplements, both tablets and gummies, contains 3,333% of the RDI and RDA for biotin for adults and children aged four and over.

105. Each serving of Nestlé's 1000 mcg Biotin Supplements contains 3,233% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

106. As for Nestlé's Hair, Skin & Nails Supplements, one serving of Softgels Advanced, with its 5000 mcg of biotin per serving, contains 16,667% of the RDI and RDA for biotin for adults and children aged four and over.

107. Each serving of Softgels Advanced contains 16,567% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

108. One serving of Gummies Advanced, with its 6000 mcg of biotin per serving, contains 20,000% of the RDI and RDA for biotin for adults and children aged four and over.

109. Each serving of Gummies Advanced contains 19,900% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four and over.

110. One serving of Caplets, with its 3000 mcg of biotin per serving, contains 10,000% of the RDI and RDA for biotin for adults and children aged four and older.

111. Each serving of Caplets contains 9,900% *more* biotin than the RDI and RDA of that vitamin for adults and children aged four years and over.

112. One serving of Gummies, with its 2500 mcg of biotin per serving, contains 8,333% of the RDI and RDA for biotin for adults and children aged four years and older.

113. Each serving of Gummies contains 8,233% more biotin than the RDI and RDA of that vitamin for adults and children aged four years and over.

114. Humans do not need to consume, and cannot obtain any nutritional benefit from, 10,000, 8000, 7500, 6000, 5000, 3000, 2500, or 1000 mcg of biotin supplements daily, as directed by Nestlé on the labels and packaging of the Biotin Supplements. These amounts vastly surpass the amount of biotin the body can use to maintain good health or to support health and appearance of their hair, skin, and nails.

115. The vast amount of biotin in each serving of Nestlé's Biotin Supplements is both nutritionally unnecessary for and unusable by consumers.

**Nestlé is Aware that Almost All of the Biotin Content in Each Serving of its Biotin Supplements is Nutritionally Valueless to Consumers**

116. Nestlé knows that the overwhelming amount of biotin in each serving of its Biotin Supplements is of no nutritional value to consumers.

117. In fact, Nestlé admits that fact in *other* dietary supplements that it distributes, markets, and sells to consumers.

118. For example, Nestlé distributes, markets and sells to consumers a multivitamin under the Solgar brand called One Daily Men's Multi, and states on Solgar's website that one serving of that supplement "***meet[s] your daily needs***" and contains "19 essential vitamins and minerals at 100% or above the recommended daily value."[9]

119. Nestlé's Solgar-branded One Daily Men's Multi multivitamin supplements contain only 45 mcg of biotin per serving, which is a minute fraction of the 1000 to 10,000 mcg per serving of biotin contained in Nestlé's Biotin Supplements.

[9] https://www.solgar.com/products/one-daily-mens-multivitamin-capsules (emphasis supplied).

120. Nestlé therefore acknowledges and represents to the public that one serving each day of 45 mcg of biotin suffices to "meet" men's daily nutritional "needs" and provides them with "100% or above" of their "recommended daily value" of biotin.

121. Nestlé also distributes, markets, and sells a Solgar-branded multivitamin called One Daily Women's Multi, and claims on Solgar's website that one serving of that supplement "***helps women meet their daily nutritional needs***" and contains "18 essential vitamins & minerals at 100% or above the recommended daily value."[10]

122. Nestlé's Solgar-branded One Daily Women's Multi multivitamin supplements contain only 45 mcg of biotin per serving.

123. Nestlé therefore acknowledges and represents to the public that one serving each day of 45 mcg of biotin suffices to help "meet" women's daily nutritional "needs" and provides them with "100% or above" of their recommended daily value of biotin.

124. Additionally, Nestlé distributes, markets, and sells Solgar-branded multivitamins geared to women and men aged 50 and over: Solgar One Daily Women's Multi 50+ multivitamins and Solgar One Daily Men's Multi 50+ multivitamins.

125. On the website for Solgar One Daily Women's Multi 50+, Nestlé states that one serving of that supplement is "uniquely formulated to ***meet [the] daily health needs*** for women 50 years and above" and that "[e]ach serving offers women 18 essential vitamins & minerals at 100% or above the recommended daily value."[11]

126. Nestlé's Solgar One Daily Women's Multi 50+ multivitamins contain only 150 mcg of biotin per serving.

127. Nestlé therefore acknowledges and represents to the public that one serving each day of 150 mcg of biotin suffices to "meet" the daily nutritional "needs" of women aged 50 and over and provides them with "100% or above" their recommended daily value of biotin.

---

[10] https://www.solgar.com/products/one-daily-womens-multivitamin-capsules (emphasis supplied).

[11] https://www.solgar.com/products/one-daily-womens-multivitamin-50-plus-capsules (emphasis supplied).

128. As for Solgar One Daily Men's Multi 50+, Nestlé states on Solgar's website that one serving of that supplement is "uniquely formulated to ***meet*** daily health ***needs*** for men 50 years and above" and that "each serving offers men 20 essential vitamins & minerals at 100% or above the recommended daily value."[12]

129. Solgar One Daily Men's Multi 50+ multivitamins contain only 75 mcg of biotin per serving.

130. Nestlé therefore acknowledges and represents to the public that one serving each day of 75 mcg of biotin suffices to "meet" the daily nutritional "needs" of men aged 50 and over and provides them with "100% or above" of their recommended daily value of biotin.

131. Nestlé's recognition of the fact that the vast amount of biotin in each serving of its Biotin Supplements is of no nutritional value to humans is also manifested by the representations that it makes to the public regarding its Garden of Life-branded multivitamins.

132. Nestlé distributes, markets, and sells a Garden of Life-branded multivitamin supplement aimed at all family members, called Vitamin Code Family Whole Food Multivitamin. Its packaging and label for that product states that it is "specifically formulated to ***meet the needs*** of adults, teens and kids age 6 and over, providing the nourishment the body craves ***to maintain optimal health and well-being***."[13]

133. Each serving of Garden of Life Vitamin Code Family Whole Food Multivitamin contains only 30 mcg of biotin.

134. Nestlé therefore acknowledges and represents to the public that one serving each day of 30 mcg of biotin suffices to "***meet the needs of adults, teens and kids age 6 and over***" and provides them with the nourishment their bodies "***crave***" to maintain "***optimal health and well-being***."[14]

---

[12] https://www.solgar.com/products/one-daily-mens-multivitamin-50-plus-capsules (emphasis supplied).

[13] https://www.gardenoflife.com/vitamin-code-family-multivitamin-vegetarian-capsules (emphasis supplied).

[14] *Id.* (emphasis supplied).

135. Indeed, 30 mcg of biotin *does*, as the FDA, the NIH, and Nestlé itself acknowledge, suffice to meet the daily nutritional needs of adults, teens, and kids age 6 and over, and provides them with the nourishment their bodies "crave" to maintain "optimal health and well-being."

136. Nestlé's awareness that the overwhelming amounts of biotin in each serving of its Biotin Supplements are nutritionally worthless is further amplified in a blog post on its website for its Solgar-branded multivitamin supplements, where Nestlé states:

> Taking a multivitamin is a great way to get the nutrients you need while not overcomplicating your vitamin routine. However, in a world filled with an overwhelming array of multivitamin options, finding the perfect one to suit your unique needs can feel daunting. Whether you're on a quest for better health, enhanced energy, or simply want to cover your nutritional bases, finding the right multivitamin begins with making informed decisions.
>
> *
>
> Let's take a look at some of the most important things to look for in a multivitamin, as well as some of the best multivitamins for men and women.
>
> *
>
> Quality over quantity: ***When selecting a multivitamin, it's not just about cramming in as many nutrients as possible.*** It's about choosing one that delivers essential vitamins and minerals in a bioavailable format that your body can actually use.
>
> *
>
> The first factor to consider when selecting a multivitamin is making sure that it delivers the ***appropriate*** daily value of ingredients. ***The daily value represents the amount of a specific nutrient that the average person needs daily to maintain good health.***
>
> *
>
> ***You should choose a multivitamin with 100% of the daily value of its ingredients***. Different multivitamins may contain different amounts of certain vitamins and minerals, so it is worth checking the labels carefully.[15]

137. One hundred percent of the "daily value" of biotin is 30 mcg for adults and children aged 4 and over, and 35 mcg for pregnant women and lactating women.

138. Nestlé's Biotin Supplements "cram" far more biotin into each serving than "100% of the daily value" of biotin.

139. Nestlé knowingly "crams" more biotin into each serving of its Biotin Supplements than any person even remotely needs or from which any person can nutritionally benefit in a day,

---

[15] https://www.solgar.com/blog/nutrition/multivitamin-must-haves (emphasis supplied).

including those persons who wish to promote the health and appearance of their hair, skin, and nails, and charges consumers for the nutritionally valueless excess.

140. Given Nestlé's public affirmation that ingesting 30 mcg of biotin every day suffices to "meet the needs of adults, teens and kids age 6 and over," and that it provides them with the nourishment their bodies "crave to maintain optimal health and well-being," it follows as a matter of simple arithmetic that taking one serving of the Biotin Supplements containing 1000 mcg of biotin per serving is equivalent to taking thirty-three (33) 30-mcg per-serving biotin supplements each and every day, of which only one would be nutritionally necessary.

141. As for Nestlé's Biotin Supplements containing 2500 mcg of biotin per serving, taking one serving of those supplements is equivalent to taking eighty-three (83) 30-mcg per-serving biotin supplements every single day, of which only one would be nutritionally necessary.

142. As for Nestlé's Biotin Supplements containing 3000 mcg of biotin per serving, taking one serving of those supplements is equivalent to taking 100 30-mcg per-serving biotin supplements every day, of which only one would be nutritionally necessary.

143. As for Nestlé's Biotin Supplements containing 5000 mcg of biotin per serving, taking one serving of those supplements is equivalent to taking 167 30-mcg per-serving biotin supplements every day, of which only one would be nutritionally necessary.

144. For Nestlé's Biotin Supplements containing 6000 mcg of biotin per, taking one serving of those supplements is equivalent to taking 200 30-mcg biotin per-serving supplements every day, of which only one would be nutritionally necessary.

145. And as for Nestlé's Biotin Supplements containing 10,000 mcg of biotin per serving, taking one serving of those supplements is equivalent to consuming 333 30-mcg per-serving biotin supplements every day, of which only one would be nutritionally necessary.

146. If a person consumed a 30-mcg per-serving biotin supplement every day of the year, they will have consumed 10,950 micrograms-worth of biotin supplement in a 365-day year—more than a single serving of Nestlé's 10,000-mcg supplements.

147. If a person were to consume Nestlé's 10,000-mcg per-serving Biotin Supplement every day of the year, as directed by Nestlé, they will have consumed 3,650,000 micrograms worth of biotin supplements in a year, of which a staggering 3,639,050 mcg—a full 99.7% of that biotin—would be, by Nestlé's own acknowledgement, nutritionally worthless, needless, and valueless.

**What Happens to All of the Excess Biotin in Nestlé's Biotin Supplements Once Ingested?**

148. Once ingested, the excess biotin in each serving of Nestlé's Biotin Supplements is not stored in the body but is, instead, constantly excreted from the body.

149. Nestlé does not provide this information on the labels and packaging of the Biotin Supplements; however, Nestlé is well-aware of this fact. For example, in a blog post appearing on Garden of Life's website titled "B-Complex Essential Nutrients," written by Dawn Thorpe Jarvis, M.S., R.D., L.D.N., the author states, in part, that "B vitamins are water soluble, are not stored in the body and are constantly excreted."[16]

150. Garden of Life, like Nature's Bounty, is owned by Nestlé.

151. Nestlé further acknowledges that all of the excess biotin in each serving of Nestlé's Biotin Supplements is not stored in the body, but is, instead, excreted from the body as waste, in a blog post appearing on its Pure Encapsulation's website titled "How B Vitamins Support Mild Memory Problems Associated with Aging," written by Maria Murphy, RD, LDN and Heidi Harris, RD-N, CD-N, LD-N.[17]

152. Pure Encapsulations, like Nature's Bounty, is owned by Nestlé.

153. In that blog post, the authors write that "B vitamins are water-soluble, meaning that they are readily used by the body and any excess is naturally excreted by the body. Unlike fat-soluble vitamins, such as vitamins A, D, E and K, B vitamins are not stored in the body for later use."

---

[16] https://www.gardenoflife.com/blog/b-complex-essential-nutrients.
[17] https://smartq.pureforyou.com/blog/559431155746/how-b-vitamins-support-mild-memory-problems-associated-with-aging.

154. Relating to another of its vitamin products, Nestlé acknowledges that the excess biotin in the Biotin Supplements is not stored by the body, but is instead excreted as waste, when it states, on its website for Nature's Bounty Complete B Vitamin Complex, that "B vitamins are a group of water-soluble vitamins. Because they are water soluble, they are not stored by the body and need constant replenishment through our diet."[18]

155. In short, all the excess biotin in each serving of Nestlé's Biotin Supplements serves no nutritional purpose, is not stored by the body, and literally goes to waste.

**Nestlé Intentionally, Misleadingly and Deceptively Conceals from Consumers the Material Fact that the Overwhelming Amount of Biotin in its Biotin Supplements is Nutritionally Worthless**

156. Among the methods Nestlé uses to promote the sale of its Biotin Supplements to consumers is to tout their purported health benefits on those supplements' principal display panels.

157. For instance, Nature's Bounty 1000, 5000, and 10,000 mcg Biotin Supplements state on their principal display panels that each "Supports Healthy Hair, Skin & Nails."

158. Each of Nestlé's Hair, Skin & Nails Supplements states on its principal display panel that it is "The #1 BRAND FOR HAIR, SKIN & NAILS."

159. Nestlé makes those health-related claims on its Biotin Supplements' labels intending that consumers will rely on them.

160. Yet nowhere on any of Nestlé's Biotin Supplements' labels or relevant packaging, nor anywhere in Nestlé's advertising and marketing for those supplements, does Nestlé state that the vast amount of the biotin contained in each serving of those supplements is nutritionally worthless.

161. Nestlé knows that the vast amount of the biotin contained in each serving of Nestlé's Biotin Supplements is nutritionally worthless.

162. Nestlé suppresses this material information because it intends for consumers to believe that all of the biotin in each serving of its Biotin Supplements will support the health and appearance of their hair, skin, and nails, and Nestlé knows that if it were to disclose the fact that

[18] https://www.naturesbounty.co.uk/product/complete-b-vitamin-complex

an overwhelming amount of biotin in each serving of the Biotin Supplements was nutritionally worthless, reasonable consumers would decline to purchase them.

163. Nestlé's representations on the principal display panels of the Biotin Supplements are misleading to reasonable consumers because Nestlé represents to consumers, like Plaintiff, that they will receive certain health and appearance benefits from taking the supplements and at the same time suppresses from them the material information that the overwhelming amount of biotin in each serving is nutritionally valueless, destined to be excreted as waste, unstored and unused by the body. In other words, accepting the health and appearance claims as true—that biotin is beneficial to the health and appearance of hair, skin, and nails—failing to inform consumers that almost all of the biotin that the Biotin Supplements contain will be excreted as waste having provided no nutritional or other value to the body makes Nestlé's representations misleading and deceptive.

**Consumers Reasonably Rely on Nestlé's Deceptive Representations**

164. Nestlé makes health and beauty-related claims on the packaging and labeling of its Biotin Supplements intending for consumers to rely on them when deciding whether to buy those supplements.

165. A reasonable consumer would consider the packaging of a product when deciding whether to purchase it.

166. Plaintiff read and relied upon the labels and packaging of the Biotin Supplements when making purchasing decisions. Had she known Defendant misrepresented and partially misrepresented products by failing to disclose that the vast majority of the biotin in the Biotin Supplements was nutritionally valueless, she would not have purchased the Biotin Supplements or paid a premium price.

167. Specifically, when buying Nestlé's Biotin Supplements, reasonable consumers, including Plaintiff, reasonably relied on Nestlé's representations that all of the biotin in each serving of those supplements would provide them with actual nutritional value, and that all of that biotin would support the health and appearance of their hair, skin, and nails.

168. Had Nestlé not suppressed from consumers, including Plaintiff, the fact that the overwhelming amount of biotin that it crammed into each serving of Nestlé's Biotin Supplements is needless, excessive, and nutritionally worthless, but had instead disclosed that fact just like it disclosed biotin's purported health benefits, those consumers would not have bought Nestlé's Biotin Supplements or would not have paid a premium price.

**Consumers Sustain Damage When Buying Nestlé's Biotin Supplements**

169. Given Nestlé's acknowledgment that 30 mcg of biotin suffices to "meet" the daily "needs of adults, teens and kids age 6 and over" and provide them with "the nourishment [their bodies] crave[] to maintain optimal health and well-being," it follows that consumers do not need to consume biotin supplements of anywhere near 1000 mcg or higher each day in order "to maintain optimal health and well-being," and that Nestlé knows that.

170. Consumers who have purchased Nestlé's Biotin Supplements have therefore been monetarily damaged, because the overwhelming amount of what they have paid for is nutritionally valueless and destined to be excreted as waste, unused by the body.

171. For Nestlé's 1000 mcg Biotin Supplements, 970 mcg of the biotin in each serving of those supplements—which amounts to 97% of their total biotin content—are excessive and nutritionally unnecessary.

172. Consumers are therefore damaged in the amount of 97% of the price they paid for each unit of Nestlé's 1000 mcg Biotin Supplements that they purchased.

173. For Nestlé's 5000 mcg Biotin Supplements, 4970 mcg of the biotin in each serving of those supplements—which amounts to 99.4% of their total biotin content—are excessive and nutritionally unnecessary.

174. Consumers are therefore damaged in the amount of 99.4% of the price they paid for each unit of Nestlé's 5000 mcg Biotin Supplements that they purchased.

175. For Nestlé's 10,000 mcg Biotin Supplements, 9970 mcg of the biotin in each serving of those supplements—which amounts to 99.7% of their total biotin content—are excessive and nutritionally unnecessary.

176. Consumers are therefore damaged in the amount of 99.7% of the price they paid for each unit of Nestlé's 10,000 mcg Biotin Supplements that they purchased.

177. For Nestlé's 2500 mcg Hair, Skin and Nails Supplements, 2470 mcg of the biotin in each serving of those supplements—which amounts to 98.8% of their total biotin content—are excessive and nutritionally unnecessary.

178. Consumers are therefore damaged in the amount of 98.8% of the price they paid for each unit of Nestlé's 2500 mcg Hair, Skin and Nails Supplements that they purchased.

179. For Nestlé's 3000 mcg Hair, Skin and Nails Supplements, 2970 mcg of the biotin in each serving of those supplements—which amounts to 99% of their total biotin content—are excessive and nutritionally unnecessary.

180. Consumers are therefore damaged in the amount of 99% of the price they paid for each unit of Nestlé's 3000 mcg Hair, Skin and Nails Supplements that they purchased.

181. For Nestlé's 5000 mcg Hair, Skin and Nails Supplements, 4970 mcg of the biotin in each serving of those supplements—which amounts to 99.4% of their total biotin content—are excessive and nutritionally unnecessary.

182. Consumers are therefore damaged in the amount of 99.4% of the price they paid for each unit of Nestlé's 5000 mcg Hair, Skin and Nails Supplements that they purchased.

183. For Nestlé's 6000 mcg Hair, Skin and Nails Supplements, 5970 mcg of the biotin in each serving of those supplements—which amounts to 99.5% of their total biotin content—are excessive and nutritionally unnecessary.

184. Consumers are therefore damaged in the amount of 99.5% of the price they paid for each unit of Nestlé's 6000 mcg Hair, Skin and Nails Supplements that they purchased.

185. Reasonable consumers believe, based on the fact that Nestlé is selling its Biotin Supplements in the first place, coupled with the fact that Nestlé ascribes to those supplements' specific health benefits, that all of the biotin content in each serving of Nestlé's Biotin Supplements is of nutritional value to consumers.

186. But unfortunately for and unbeknownst to consumers, that is not the case. The overwhelming amount of biotin contained in each serving of Nestlé's Biotin Supplements is nutritionally worthless to consumers, although highly profitable for Nestlé.

**The FDA Does Not Regulate the Amount of a Dietary Ingredient That Can Be Contained in a Serving of a Dietary Supplement**

187. Plaintiff's claims against Nestlé in this action are not preempted by federal law.

188. No federal statute or regulation regulates or addresses the amount of biotin that can be included in a dietary supplement.

189. On the contrary, the FDA affirmatively states that it does *not* regulate the amount of any dietary ingredient—including biotin—that may be included in a serving of a dietary supplement.

190. To quote the FDA, "[o]ther than the manufacturer's responsibility to meet the safety standards and labeling requirements for dietary supplements and to comply with current good manufacturing regulations, ***there are no laws or regulations that limit the serving size of a dietary supplement or the amount of a dietary ingredient that can be in a serving of a dietary supplement***. This decision is made by the manufacturer and does not require FDA approval."[19]

191. Plaintiff's claims in this action are therefore not preempted as a matter of law.

**<u>PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS</u>**

192. Defendant knew that reasonable consumers such as Plaintiff and the proposed Class would be the end purchasers of the Biotin Supplements and the targets of its advertising, marketing, packaging, and statements.

193. Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Biotin Supplements, including Plaintiff and the proposed Class.

194. Defendant directly marketed to Plaintiff and the proposed Class through its packaging.

---

[19] https://www.fda.gov/food/information-consumers-using-dietary-supplements/questions-and-answers-dietary-supplements (emphasis supplied).

## APPLICABILITY OF EQUITABLE TOLLING AND THE DISCOVERY RULE TO THE STATUTE OF LIMITATIONS

195. Fraudulent concealment and/or the discovery rule toll Plaintiff's claims.

196. The statute of limitations is tolled for all of Plaintiff's statutory consumer protection and common law claims due to Nestlé's fraudulent concealment that the Biotin Supplements contained nutritionally useless amounts of biotin. Defendant intentionally concealed these material facts from Plaintiff.

197. Defendant knew the nutritional value of the biotin in the supplement was a material consideration for any consumer of the Biotin Supplements.

198. Defendant violated the relevant state consumer fraud statutes by deceiving customers as to the true nature, quality, and potential benefits of the Biotin Supplements.

199. Based on Defendant concealing and misrepresenting material facts to Plaintiff, Plaintiff could not reasonably discover that the Biotin Supplements contained nutritionally useless excess biotin.

200. Plaintiff did not know that the Biotin Supplements contained nutritionally useless excess biotin. Instead, Nestlé only represented that the Biotin Supplements were nutritious and made of high-quality ingredients to support healthy hair, skin, and nails.

## CLASS ACTION ALLEGATIONS

201. Plaintiff brings this action individually and on behalf of the following class pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons who are residents of California who, from May 14, 2023 to the present, purchased the Biotin Supplements for household use, and not for resale (the "Class").

202. Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

203. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation, and the members of the Class are easily ascertainable.

204. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Class in a single action will provide substantial benefits to the parties and Court.

205. Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a) whether Defendant owed a duty of care;

(b) whether Defendant owed a duty to disclose;

(c) whether Defendant misrepresented and partially misrepresented the amount of biotin that offers benefits and the nutritiousness of the supplements by failing to disclose the amount of biotin that can be absorbed in a single dose;

(d) whether the claims of the Plaintiff and the Class serve a public benefit;

(e) whether Defendant's packaging is false, deceptive, and misleading;

(f) whether the representations, partial representations, and concealment are material to a reasonable consumer;

(g) whether the representations, partial representations, and concealment are likely to deceive a reasonable consumer;

(h) whether Defendant had knowledge that the representations, partial representations, and concealment were material and false, deceptive, and/or misleading;

(i) whether Defendant breached its duty of care;

(j) whether Defendant breached its duty to disclose;

(k) whether Defendant violated the laws of the State of California;

(l) whether Defendant engaged in unfair trade practices;

(m) whether Defendant engaged in false advertising;

(n) whether Plaintiff and Class members are entitled to actual, statutory, and punitive damages; and

(o) whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

206. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harm are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

207. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

208. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

209. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

210. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

211. As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Unfair Competition Law, California Business & Professions Code § 17200, *et seq*., Against Defendant on Behalf of Plaintiff and the Class

212. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

213. The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Fraudulent**

214. A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

215. As set forth herein, Defendant's material misrepresentations and partial misrepresentations related to the Products are likely to deceive reasonable consumers and the public. Specifically, Defendant misleadingly marketed to reasonable consumers that all the biotin in the Products was nutritionally beneficial to consumers based on the Claims on the Products' packaging.

**Unlawful**

216. As alleged herein, Defendant has advertised the Biotin Supplements with misrepresentations and partial misrepresentations such that Defendant's actions violate at least the following laws:

- The Consumers Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750, *et seq*.; and
- The False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

217. Because FDA regulations include no requirement that the public be likely to experience deception, and thus, the "reasonable consumer test" is not an element of the FDA regulations, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's unlawful acts.

**Unfair**

218. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products was unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

219. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because it violates public policy as declared by

specific constitutional, statutory, or regulatory provisions, including, but not limited to, the FAL and the CLRA.

220. Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid. Specifically, the increase in profits obtained by Defendant through the misleading labeling does not outweigh the harm to Plaintiff and members of the Class who were deceived into purchasing the Biotin Supplements unaware that the overwhelming majority of biotin in the supplement is nutritionally useless. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the amount of biotin needed and usable by the human body. Further, the harm could have easily been avoided by Defendant as it would have cost it only minimally to indicate to consumers that the supplements contain far more biotin than the body needs or can use, and that all excess will be excreted as waste.

221. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unsuspecting consumers.

222. Plaintiff and other members of the Class are likely to continue to be damaged by Defendant's deceptive trade practices because Defendant continues to disseminate misleading information. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

223. Defendant's conduct caused and continues to cause substantially injury to Plaintiff and the other members of the Class. Plaintiff suffered injury in fact as a result of Defendant's unlawful conduct.

224. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

225. Plaintiff also seeks an order for the restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful competition.

226. Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or the UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Defendant's behavior.

**COUNT II**
**Violation of California False Advertising Law, California Business & Professions Code § 17500, *et seq*., Against Defendant on Behalf of Plaintiff and the Class**

227. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

228. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

229. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

230. As alleged herein, specifically, Defendant misleadingly marketed to reasonable consumers that the Biotin Supplements provided nutritional benefits when the overwhelming majority of the biotin in the supplements provided no nutritional benefits and was excreted as waste. Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because Plaintiff purchased the Products in reliance on Defendant's false and misleading marketing claims stating or suggesting that the Products provide nutritional benefits.

231. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

232. Defendant profited from the sale of the falsely and deceptively advertised Products to unsuspecting consumers.

233. As a result, Plaintiff, members of the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

234. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and members of the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the Complaint.

235. Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA, and restitution is not limited to returning to Plaintiff and members of the Class monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies under the CLRA are more limited than the equitable remedies under the FAL, and are therefore inadequate.

**COUNT III**

**Fraud by Misrepresentation Against Defendant on Behalf of Plaintiff and the Class**

236. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

237. Defendant's packaging gave the impression to Plaintiff and members of the Class that all of the biotin in the Biotin Supplements supported the health and appearance of hair, skin, and nails, information that is material to Plaintiff and members of the Class.

238. Defendant's representations, partial representations, and concealment were false because an overwhelming amount of biotin in the Biotin Supplements was excessive, provided no nutritional value, and could not be used by the consumer for any nutritional purpose.

239. Defendant's representations, partial representations, and concealment were false when Defendant made them because:

(a) Defendant was in a superior position to know the true state of facts about its Biotin Supplements; and

(b) Defendant was in a superior position to know the nature of the ingredients, characteristics, dosage, and benefits of the biotin in its Biotin Supplements for consumption by consumers.

240. Defendant intended that the Plaintiff and members of the Class rely on Nestlé's representations, partial representations, and concealment because as a health supplement manufacturer, Defendant is in a special position of trust upon which consumers rely. Additionally, Defendant knew or should have known its representations, partial representations, and concealment would induce Plaintiff and the Class to purchase the Biotin Supplements.

241. Plaintiff and members of the Class reasonably relied on Nestlé's representations, partial representations, and concealment because they trust Nestlé to provide quality products with nutritional benefits. Defendant knows that consumers seek out supplements that provide nutritional benefits, and that consumers will pay for supplements represented as possessing such qualities.

242. Plaintiff and members of the Class were harmed as a direct and proximate result of Defendant's conduct. Plaintiff and the Class suffered actual damages by: (1) paying a premium price for the Biotin Supplements all of which they reasonably believed provided nutritional benefits; (2) purchasing the Biotin Supplements they would not have had the truth been disclosed; and/or (3) paying for the Biotin Supplements, the overwhelming majority of which were nutritionally worthless because the vast majority of the biotin they contained far exceeded what is nutritionally needed, was never usable by the body at all, and was excreted as waste.

243. Plaintiff's and members of the Class's reliance on Defendant's representations was a substantial factor causing harm to the Plaintiff and members of the Class.

244. Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV
### Negligent Misrepresentation Against Defendant on Behalf of Plaintiff and the Class

245. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

246. Defendant marketed the Biotin Supplements in a manner conveying to reasonable consumers that they provide nutritional benefits to consumers.

247. Defendant's representations, partial representations, and concealment are material to a reasonable consumer because they relate to human health and nutrition. Reasonable consumers would attach importance to such representations, partial representations, and concealment and would be induced to act thereon in making purchasing decisions. Defendant intends that Plaintiff and other consumers rely on the representations, partial representations, and concealment, as evidenced by the information on the labels and packaging.

248. In selling the Biotin Supplements, Defendant acted in the ordinary course of its business and had pecuniary interest in Plaintiff and other members of the Class purchasing the Biotin Supplements.

249. Defendant owed a duty of care to Plaintiff and the Class Members not to provide them false or incomplete information when they were making their purchasing decisions regarding the Products.

250. Defendant knew or had been negligent in not knowing that the Biotin Supplements contained excessive amounts of biotin. Defendant had no reasonable grounds for believing its representation, partial representations, and concealment were not false and misleading.

251. Defendant negligently marketed that all of the biotin in the Biotin Supplements provided nutritional benefits to consumers.

252. Plaintiff and other members of the Class have reasonably and justifiably relied on the representations, partial representations, and concealment when purchasing the Biotin Supplements and, had the truth been known, would not have purchased them at all or at least not at the prices at which they were offered.

253. Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and other members of the Class have suffered economic losses and other general and specific damages, in the amount of the purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## COUNT V
## Unjust Enrichment Against Defendant on Behalf of Plaintiff and the Class

254. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

255. Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and the Class Members' purchases of the Biotin Supplements, and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

256. It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

257. As a result, Plaintiff and members of the Class are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendant as a result of such business practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B. An order requiring, that if Defendant continues to sell biotin supplements, to sell them in doses which are not almost entirely without nutritional value and which are appropriately priced to reflect the massive reduction in those amounts as compared to the Biotin Supplements;

C. An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

D. An order awarding declaratory relief, and any further injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's conduct;

E. An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the state laws, plus pre- and post-judgment interest thereon;

F. An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G. An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

H. An order requiring Defendant to pay punitive damages on any count so allowable;

I. An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 14, 2026

HECHT PARTNERS LLP

By: */s/ Rebecca Anne Peterson*
REBECCA A. PETERSON (#241858)
KRISTA K. FREIER
CATHERINE PETERSON
1650 W. 82nd Street, Suite 880
Bloomington, Minnesota 55431
Telephone: (612) 778-9595
E-mail: rpeterson@hechtpartners.com
kfreier@hechtpartners.com
cpeterson@hechtpartners.com

WEXLER BOLEY & ELGERSMA, LLP
KARA A. ELGERSMA
ANDREW D. YODER
311 S. Wacker, Suite 5450
Chicago, Illinois 60606
Telephone: (312) 346-2222
Email: kae@wbe-llp.com
ay@wbe-llp.com

***Counsel for Plaintiff and the Proposed Class***